720 So.2d 720 (1998)
STATE of Louisiana, Appellee,
v.
Stephen Michael McGILL, Appellant.
No. 31202-KA
Court of Appeal of Louisiana, Second Circuit.
September 23, 1998.
Louisiana Appellate Project by Amy C. Ellender, Mer Rouge, for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche District Attorney, Eron J. Brainard, Catherine M., Estopinal, Assistant District Attorneys, for Appellee.
Before NORRIS, WILLIAMS and PEATROSS, JJ.
PEATROSS, Judge.
After a bench trial, defendant, Stephen McGill, was convicted of possession of a firearm by a convicted felon and sentenced to ten years at hard labor. He appeals his conviction, arguing that evidence used against him at trial was obtained illegally and that the evidence was insufficient to support his conviction. For the following reasons, we affirm.

FACTS
On April 2, 1997, Officer J.D. Olds and Officer T.S. Hunt of the Shreveport Police Department responded to a complaint by Jerry Lewis ("Lewis") that he had been in a fight with the defendant, Stephen McGill ("McGill"). Lewis told the officers that McGill had "pulled" a gun on him during the altercation, but that he was able to grab the gun, take it from McGill, and place it in the trunk of McGill's car. Lewis further informed the officers that McGill was living in the Best Value Inn Hotel on Monkhouse Drive in Shreveport.
Officers Olds and Hunt, accompanied by Lewis, proceeded to the Best Value Inn Hotel. According to the officers, they knocked on the door of the room in which McGill was staying and a white male answered the door. Lewis then identified the man answering the door as McGill, the person who had "pulled" a gun on him earlier that day. Officers Olds and Hunt handcuffed McGill and Officer Olds read McGill his Miranda rights. Present in the room at the time were McGill, his wife, and their two small children. Officer Hunt *721 then searched the room and found a snub nose .38 caliber revolver under a mattress on which one of McGill's children was sleeping.
On July 17, 1997, a bill of information was filed charging McGill with possession of a firearm by a convicted felon. McGill filed a motion to suppress the handgun seized in the hotel room. A hearing on the motion was held during the bench trial and the motion was denied. McGill was found guilty of the crime charged and sentenced to the statutory minimum sentence of ten years at hard labor without the benefit of parole, probation or suspension of sentence. From this conviction, McGill appeals.

DISCUSSION

Denial of Motion to Suppress
In his first assignment of error, McGill asserts that the trial court erred in denying his Motion to Suppress the handgun. McGill argues that the State did not prove that consent was given; therefore, the handgun should have been suppressed as improperly seized. In the alternative, McGill asserts that, if consent was given, it was not free and voluntary.
A warrantless search and seizure is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Talbert, 449 So.2d 446 (La.1984). The burden of proof is on the state to affirmatively show that one of the exceptions applies. La.C.Cr.P. art. 703(D); Talbert, supra.
One specifically established exception to the requirements of both a warrant and probable cause for search is a search conducted pursuant to consent. State v. Raheem, 464 So.2d 293 (La.1985); State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082. Oral consent to a search is valid. Crews, supra. When the state seeks to rely on consent to justify the lawfulness of a search, it has the burden of proving that consent was given freely and voluntarily. State v. Owen, 453 So.2d 1202 (La.1984); Crews, supra. The voluntariness of a defendant's consent to a search is a question of fact to be determined by the trial judge under the facts and circumstances of each case. State v. Ossey, 446 So.2d 280 (La.1984). When reviewing a ruling on a motion to suppress, the court of appeal places great weight on the trial court's factual determinations because of that court's opportunity to observe witnesses and assess credibility. State v. Paggett, 28,843 (La. App.2d Cir.12/11/96), 684 So.2d 1072.
As previously stated, Officer Olds testified that when he and Officer Hunt knocked on the door of the hotel room, a white male opened the door. Officer Olds stated that Lewis identified this male as McGill. Officer Olds testified that he asked McGill whether he had any guns in his hotel room and McGill answered in the negative. According to Officer Olds' testimony, he then asked McGill for his consent to search the room for any guns and McGill said he had no problem with Officer Olds searching the room. Officer Olds stated that, during the search of the room, Officer Hunt found a snub nose .38 caliber revolver under a mattress.
Officer Hunt also testified for the prosecution, stating that a white male answered the officers' knock on the hotel room door. According to Officer Hunt, after Lewis identified McGill, Officer Olds asked McGill if he had a gun and McGill said he did not. Officer Hunt testified that Officer Olds then asked McGill if he minded if they looked for the gun and McGill replied that he did not mind. According to Officer Hunt, he first searched the car and then the hotel room, finding the gun under a mattress.
McGill asserts, however, that his wife's testimony contradicts the officers' version of events and sheds suspicion on whether consent to the search was obtained. Ms. McGill testified that it was she, not her husband, who answered the door when the officers knocked. She further stated that the officers did not ask for permission to enter the room or to search the car or the room. McGill urges that, due to conflicts between his wife's testimony and that of the officers, the State did not prove consent was given.
McGill also asserts that conflicting testimony by the officers regarding the availability of written consent forms raises doubt whether consent to the search was given. Both *722 officers testified that McGill orally gave them permission to search the room. Their testimony differed, however, on whether they had consent forms available to them. Officer Olds testified that he had never been supplied with such forms and that he was not aware of the police department having such forms. Officer Hunt testified that the department had standard forms which it made available to the officers and that, at the time of the search of McGill's room, consent forms were in the officers' police car. He stated he did not ask McGill to sign a consent form, however, because the officers believed a gun was in the room and small children were present.
McGill further argues, in the alternative, that if consent was given, it was not voluntary because at the time he allegedly gave consent, he was suffering from injuries received in the altercation with Lewis. As proof of his injured condition, McGill relies on his wife's testimony that he was calling 911 when the officers arrived and on the testimony of Officer Olds that, when fire department personnel arrived in response to the 911 call, they treated McGill for injuries. Additionally, McGill asserts that his alleged consent was not free and voluntary because he was handcuffed in front of his wife and children in an atmosphere of anxiety, fear and intimidation.
In ruling on the Motion to Suppress, the trial judge noted that both officers testified that McGill orally consented to the search. The trial judge stated there was no evidence that would lead the court to believe that the officers would lie about receiving McGill's consent. Rejecting Ms. McGill's testimony and stating that he "fully believed" the officers, the trial judge denied the Motion to Suppress. Implicit in this denial is the finding that McGill's consent was voluntary.
As stated above, the trial court's factual determinations are given great weight on appeal because of the trial court's ability to observe witnesses and assess credibility. Paggett, supra. When presented with conflicting testimony regarding whether McGill consented to the search, the trial court rejected the testimony of Ms. McGill and found credible the testimony of Officer Olds and Officer Hunt. On the record before us, we cannot say the trial court's credibility determination was unreasonable.
Further, the trial court's implicit finding that McGill's consent was voluntary was a question of fact to be determined by the trial judge under the particular facts of this case. Ossey, supra. The record does not indicate that McGill's injuries impaired his ability to understand what the officers were requesting and there is no indication that he was coerced or intimidated into consenting to the search. This court will not second guess findings of fact supported by the record.
The search conducted by Officers Hunt and Olds was permissible as a search pursuant to consent. The trial court properly admitted into evidence the handgun seized in the search. This assignment of error is without merit.

Sufficiency of the Evidence
McGill argues that even if the handgun was properly allowed into evidence, the evidence is insufficient to convict him of the charged offense. Specifically, McGill argues that the State failed to prove beyond a reasonable doubt that he possessed the handgun and that he had the intent to possess the weapon.
The relevant inquiry when reviewing a conviction for the sufficiency of the evidence is whether, on viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Cotton, 25,940 (La. App.2d Cir.3/30/94), 634 So.2d 937. The appellate court will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. Cotton, supra.
Under LSA-R.S. 14:95.1, to convict a defendant of possession of a firearm by a convicted felon, the state is required to prove beyond a reasonable doubt: (1) possession of a firearm; (2) previous conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. State v. *723 Husband, 437 So.2d 269 (La.1983); State v. Tatum, 27,301 (La.App.2d Cir.9/27/95), 661 So.2d 657. The statute does not require actual possession or specifically require that the defendant have the firearm on his person. Constructive possession is sufficient to support a finding of guilty. State v. Day, 410 So.2d 741 (La.1982); State v. Washington, 605 So.2d 720 (La.App. 2d Cir.1992), writ denied, 610 So.2d 817 (La.1993).
The elements of a previous conviction of an enumerated felony and the absence of the ten-year statutory period are conceded and not an issue in this case. To convict McGill of this offense, therefore, the State must prove that McGill possessed the firearm and that McGill had a general intent to possess the firearm.
The prosecution offered the testimony of Lewis and William Gore. As stated above, Lewis testified that McGill had attempted to "pull" a gun while they were arguing and that he took the gun away from McGill. Lewis further stated that, after he obtained control of the gun, he removed the bullets and extractor rod and threw them out the car window. At trial, Lewis identified the gun that the police seized as the one McGill attempted to "pull."
William Gore, Lewis' employer, testified that, earlier on the day McGill was arrested, he had seen McGill take a handgun out of his waistband and wave it around, while telling Gore to look at it. Gore testified that the gun he saw McGill "show off" was similar to the one introduced at trial.
As previously stated, Officer Olds testified that a gun was found in McGill's room. Officer Olds further testified that after the gun was found, McGill said that Lewis had pulled it on him, and that, after a brief struggle, Lewis threw the gun in McGill's car as McGill was driving away. According to Officer Olds, when asked how the gun got from the car to the mattress, McGill admitted that the gun was his and that he had taken the gun out of the car and put it under the mattress. During his testimony, Officer Hunt identified the gun introduced at trial as the one he found under the mattress. He stated that the extractor rod was missing from the cylinder and that the rod had been missing when he found the gun.
Ms. McGill testified, however, that she, not McGill, was the only person to handle the gun. In her testimony, Ms. McGill stated the gun belonged to her, but that she had not told the officers this because it was not registered in her name. She further testified that McGill had not used the gun and that Lewis had not seen the gun. On direct examination, Ms. McGill stated that she had placed the gun under the mattress. On cross-examination, however, she stated to the contrary that McGill had been with her earlier in the day when she purchased the gun and that he had hidden the gun from the children. When asked if McGill had access to the gun and could have obtained the gun if he wanted it, Ms. McGill answered in the affirmative.
In support of his argument that the State failed to prove possession and intent to possess, McGill emphasizes that neither Officer Hunt nor Officer Olds testified that they saw him with the gun and that no fingerprints were recovered from the gun. McGill argues that Lewis' testimony is suspect because Lewis is a convicted felon with animosity toward McGill and the incident report indicated that Lewis had been drinking. He similarly contends that Gore's testimony is unreliable because Gore has four convictions for driving under the influence of alcohol and had been drinking prior to the time he allegedly saw McGill with a gun. Finally, McGill argues that the testimony of his wife indicates she owned the gun and was the only person to handle it.
We find no merit in McGill's arguments. Both Lewis and Mr. Gore testified that they saw McGill with a gun in his possession. Lewis described the gun possessed by McGill as missing the extractor rod and the gun found by the officers in McGill's room was in this condition. Also, according to Officer Olds' testimony, McGill admitted to Officer Olds that the gun belonged to him. Viewing the evidence in the light most favorable to the prosecution, the trial court could have found every element of the offense to be proven beyond a reasonable doubt. That Ms. McGill offered another version of who possessed the gun and how it came to be in the hotel room is a question of credibility and *724 weight of the evidence, rather than a question of sufficiency of the evidence. As an appellate court, we will not assess the credibility of witnesses or reweigh the evidence to overturn a fact finder's determination of guilt. Cotton, supra. This assignment of error lacks merit.

Error Patent
We note that the trial court informed McGill at sentencing that he had up to three years in which to seek post-conviction relief, but did not inform him that the three-year period runs from the date the judgment of conviction and sentence becomes final. La. C.Cr.P. art. 930.8(A). This defect has no bearing on the sentence and is not grounds to reverse the sentence or remand the case for resentencing. State v. Mock, 602 So.2d 776 (La.App. 2d Cir.1992). The district court is ordered to send McGill written notice setting forth the prescriptive period of La. C.Cr.P. art. 930.8 and to place into the record evidence of McGill's receipt of such notice.

CONCLUSION
For the foregoing reasons, we find McGill's Motion to Suppress to have been properly denied and find the evidence sufficient to support his conviction. The trial court is directed to give McGill written notice of the period for applying for post-conviction relief and to file proof of McGill's receipt of such notice in the record. The conviction and sentence are affirmed.
CONVICTION AND SENTENCE AFFIRMED.