855 So.2d 881 (2003)
STATE of Louisiana, Appellee,
v.
Glenn E. HOWARD, Appellant.
Nos. 37,580-KA, 37,581-KA.
Court of Appeals of Louisiana, Second Circuit.
September 24, 2003.
Opinion Granting Rehearing in Part October 23, 2003.
*883 Derrick D. Carson, for Appellant.
William R. Coenen, Jr., District Attorney, Johnny R. Boothe, Assistant District Attorney, for Appellee.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
The defendant, Glenn E. Howard, entered pleas of guilty to one count of attempted manufacture of methamphetamine and one count of possession of methamphetamine with intent to distribute. The pleas were entered pursuant to State v. Crosby, 338 So.2d 584 (La.1976), reserving the defendant's right to appeal the denial of his motion to suppress the evidence against him. The trial court sentenced the defendant to serve five years at hard labor, without benefit of parole, probation, or suspension of sentence, for attempted manufacture of methamphetamine, and five years at hard labor for possession of methamphetamine with intent to distribute. The sentences were ordered to be served concurrently. The defendant now appeals the denial of his motion to suppress, and claims that the sentences imposed are excessive. For the following reasons, we affirm.

FACTS
On December 31, 2001, following a tip from a confidential informant, Franklin Parish Sheriff's deputies investigated allegations that the defendant and several individuals were manufacturing methamphetamine at the defendant's camp house. The deputies received the defendant's permission to search the house and discovered materials used in the production of methamphetamine, as well as the finished product. *884 They also discovered marijuana, which the defendant acknowledged was his. The defendant was arrested and charged with the manufacture of methamphetamine, and possession of methamphetamine with intent to distribute. On December 12, 2002, the defendant filed a motion to suppress the evidence against him, as well as any statements he made during his detention and/or arrest. He claimed that he did not consent to the search of the camp house. The motion to suppress was denied by the trial court. Pursuant to a plea bargain, the defendant entered pleas of guilty to attempted manufacture of methamphetamine and to possession of methamphetamine with intent to distribute. The pleas were entered pursuant to Crosby, with the defendant reserving the right to seek review of the ruling on the motion to suppress.
The defendant was sentenced to serve 10 years at hard labor on each count, with the sentences to run concurrently. The sentences were suspended and the defendant was placed on supervised probation for five years.
The state filed a motion to reconsider the sentences, arguing that attempted manufacture of methamphetamine carries a mandatory sentence of at least five years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court granted the motion to reconsider and resentenced the defendant to serve five years at hard labor without benefits for attempted manufacture of methamphetamine and five years at hard labor for possession of methamphetamine with intent to distribute, with the sentences to run concurrently. The defendant was given credit for time served and was allowed to post an appeal bond.
The defendant appealed, claiming that the trial court erred in denying his motion to suppress the evidence and that the sentences imposed were excessive.

MOTION TO SUPPRESS
The defendant contends that the trial court erred in denying his motion to suppress. He argues that the warrantless entry into the camp house was unlawful and without his consent and asks that all physical evidence and his statements be suppressed. In his amended motion to suppress, he also objected to the use of all statements made after he was arrested and transported to the detention center in Franklin Parish.
La. Const. art. 1 § 5 provides:
Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court.
Motions to suppress are governed by La C. Cr. P. art. 703 which provides in pertinent part:
A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the *885 defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
D. On the trial of a motion to suppress filed under the provisions of this Article, the burden of proof is on the defendant to prove the ground of his motion, except that the state shall have the burden of proving the admissibility of a purported confession or statement by the defendant or of any evidence seized without a warrant.
E. (1) An evidentiary hearing on a motion to suppress shall be held only when the defendant alleges facts that would require the granting of relief. The state may file an answer to the motion. The defendant may testify in support of a motion to suppress without being subject to examination on other matters. The defendant's testimony cannot be used by the state except for the purpose of attacking the credibility of the defendant's testimony at the trial on the merits.
A warrantless search and seizure is presumed unreasonable unless it is justified by one of the narrowly drawn exceptions to the warrant requirement. State v. Talbert, 449 So.2d 446 (La.1984). A valid consent search is a well-recognized exception to the warrant requirement, but the burden is upon the state to prove that the consent was given freely and voluntarily. State v. Crews, 28,153 (La.App.2d Cir.5/8/96), 674 So.2d 1082. An oral consent to a search is valid. State v. McGill, 31,202 (La.App.2d Cir.9/23/98), 720 So.2d 720, writ denied, 1998-2721 (La.2/5/99), 737 So.2d 746.
Voluntariness is a question of fact to be determined by the trial judge under the facts and circumstances of each case. These factual determinations are to be given great weight on appellate review. State v. Edwards, 434 So.2d 395 (La.1983); State v. Ossey, 446 So.2d 280 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984); State v. Durr, 28,197 (La.App.2d Cir.6/26/96), 677 So.2d 596.
In this matter, the defendant filed a motion to suppress all evidence seized from his camp house and outbuildings. He also sought to suppress all statements he made to law enforcement officials. He argued that he did not give free and voluntary consent of any kind to any search of his "premises, camp house or any outlying buildings on the said property." He argued that his initial encounter with Deputy Kevin Bass of the Franklin Parish Sheriff's Office constituted an unlawful detention and arrest because it was made without an arrest warrant and without probable cause to arrest.
On December 31, 2001, Deputy Bass received a tip from a confidential informant that the defendant and other individuals were manufacturing methamphetamine at the defendant's camp house. At around 2:00 a.m., Deputy Bass and Deputy Don Ferrington arrived at the camp house to investigate. They observed a fire in the front yard and saw a man standing near the fire turn and walk into the house. Deputy Bass noted the smell of "starting fluid" which contains ether and is used in the manufacture of methamphetamine.
Deputies James Freeman and Kenneth Alexander were called for assistance. When they arrived approximately one and one-half hours later, Deputies Bass and Ferrington approached the camp house. Deputy Alexander covered the back door while Deputy Freeman detained two individuals in a vehicle who were attempting *886 to leave the area. At the hearing on the motion to suppress, Deputy Bass testified that he knocked on the door of the camp house at 3:30 a.m. and the defendant answered. Deputy Bass noticed a slight odor of alcohol on the defendant which was not detected by Deputy Ferrington. Both deputies stated that the defendant did not appear to be intoxicated. He did not appear to be unsteady on his feet and did not have slurred speech.
Deputy Bass inquired about the smell of ether and asked the defendant if he and his companions were making "dope" inside. The defendant said they were not and refused to allow the deputies inside the house.
The defendant then asked Deputy Bass if he would be arrested if he showed him what was in the camp house. He was told that he would be arrested. According to Deputies Bass and Ferrington, the defendant then opened the door to the house and motioned for them to enter. Deputy Bass said that the defendant motioned with his hand. Deputy Ferrington testified that the defendant gestured with his head.
Deputy Bass stated that upon entering the house, the defendant showed them a duffel bag with material used for the manufacture of methamphetamine. Several other persons were present in the house and moving about. No one was asleep. After securing the premises, another duffle bag was found in the bathroom. Homemade hydrogen chloride gas generators were found outside the bathroom window. The window was open and a fan was blowing, even though it was a cold night. Several grams of methamphetamine were found in the house. Deputy Bass was told that the production "didn't turn out" and only a few grams were produced that night.
Deputy Bass testified that he took the defendant outside and told him that he could stop the search, but the defendant told him to continue because he knew he was guilty. Numerous items used in the production of methamphetamine were recovered in the house as well as some marijuana that the defendant acknowledged was for his personal use. Several weapons were also recovered. Outside a shed on the property, an insulated cooler of anhydrous ammonia, a chemical used in the manufacture of methamphetamine, was recovered. Deputy Bass stated that the defendant did not make any statements until he was read his Miranda rights.
Deputy Ferrington corroborated the testimony of Deputy Bass that the defendant initially denied access to the camp house, but later opened the door and motioned for them to follow him inside. Deputy Ferrington said that there was a strong odor of ether in the house, and that numerous items associated with the production of methamphetamine were located in the house. He said that all occupants of the house were read their Miranda rights.
Deputy Alexander testified that he was called to the house by Deputy Bass and that he covered the back door of the house. Deputy Alexander said that he found materials outside the bathroom window used for the production of methamphetamine. After entering the house, Deputy Alexander said that he did not see or hear the defendant object to the search.
The defendant testified at the suppression hearing and stated that on December 31, 2001, prior to the arrival of law enforcement officers, he had consumed 12 beers and some methamphetamine. He said that he had not slept in a couple of days. However, the defendant claimed that he wasn't so tired that he thought he needed to sleep. He testified that he doesn't remember if he initially refused *887 to allow the officers to enter the camp house. The defendant denied making a motion for the officers to enter the house and denied giving permission for the officers to enter and search the premises. He claimed that Deputy Bass alone followed him into the house after knocking on the door. The defendant acknowledged that at one point, Deputy Bass took him outside and asked whether there were drugs in the house. He disputed the testimony that Deputy Bass told him that he could stop the search. The defendant claims that he was not given his Miranda rights until he was arrested and placed in the deputies' vehicle. The defendant stated that he was not under the influence of drugs or alcohol when he made a statement to deputies later that morning after his arrest.
Under the facts presented, the trial court did not err in denying the motion to suppress. The trial court, as trier of fact, found the testimony of the deputies to be credible and rejected that of the defendant. The deputies had information from a confidential informant that drugs were being manufactured in the camp house. There was activity in and around the house and a strong smell of ether was detected coming from inside the house. The defendant was informed as to why the deputies were present and what they were looking for. The defendant was aware that if drugs were found, he would be arrested.
The testimony of Deputy Bass, as corroborated by Deputies Ferrington and Alexander, shows that the defendant gave consent to allow the deputies to enter and search the house. The defendant motioned for the deputies to come inside the house. Under some circumstances, even a gesture may be sufficient to convey valid consent to search. State v. Brown, 598 So.2d 565 (La.App. 4th Cir.1992), writ denied, 605 So.2d 1092 (La.1992). No force, threats, or promises were used to gain permission to search the house.
The defendant sought to suppress his statements based upon them being "fruit" of an illegal search. Our finding that the defendant gave valid consent to search negates his theory that his statements must be suppressed because they emanated from an illegal search.
After allowing the deputies to enter the house, the defendant showed them where some of the materials used in the production of methamphetamine were located. The defendant was informed that he could stop the search, but he chose not to do so, saying that he knew he was guilty. Also, in an unsolicited statement, he identified some of the property as his. Even if the defendant had been in custody, but no Miranda warnings had been given at the time these statements were made, he was not being subjected to interrogation. The special procedural safeguards of Miranda were not required. These statements were properly ruled to be admissible. See State v. Payne, XXXX-XXXX (La.12/4/02), 833 So.2d 927; State v. Robinson, 384 So.2d 332 (La.1980); State v. Williams, 36,456 (La.App.2d Cir.10/4/02), 827 So.2d 1286.
Further, all parties agree that once the defendant was arrested and taken into custody, his Miranda rights were given before he made any statements.
Although Deputy Bass testified that the defendant had a slight odor of alcohol about his person, all the deputies agreed that the defendant did not appear to be impaired by drugs or alcohol and understood the seriousness of the situation. The defendant corroborated this as well. The degree of intoxication is but one of the circumstances to which the trial judge must look in assessing the voluntariness of the consent to search. State v. *888 Edwards, supra. In this case, the trial court was within its discretion in finding voluntary consent to search the house as well as a valid detention and arrest of the defendant. The trial court did not err in granting the motion to suppress.

EXCESSIVE SENTENCE
The defendant contends that the sentences imposed upon him are excessive. We note that the defendant did not file a motion to reconsider his sentences. Therefore we are limited to a review of the bare claim that the sentences are constitutionally excessive. State v. Duncan, 30, 453 (La.App.2d Cir.2/25/98), 707 So.2d 164; State v. Daggs, 36,216 (La.App.2d Cir.8/14/02), 823 So.2d 1093.
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1 § 20 if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Caldwell, 32,377 (La.App.2d Cir.9/22/99), 742 So.2d 91; State v. Daggs, supra. A sentence is deemed to be grossly disproportionate if, when the crime and punishment are weighed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985). A district court has wide discretion to sentence within the statutory limits, and such a sentence will not be set aside as excessive absent a manifest abuse of that discretion. State v. Square, 433 So.2d 104 (La.1983).
At the original sentencing, the court noted that the defendant allowed some individuals to use his camp house to manufacture methamphetamine in exchange for a quantity of the drug for his own use. The camp was forfeited as a result of the criminal charges. The court noted that the defendant had a good work ethic and supported his elderly mother. Other than a DWI conviction in 1989, the defendant had no prior criminal record. The court stated that the defendant had used drugs since his 20's and had never undergone any sort of drug treatment.
The court found that the goals of rehabilitation and deterrence would not be served by a lengthy sentence in this matter. The court then imposed an illegally lenient sentence of 10 years at hard labor, on each count, to run concurrently, suspended the sentences, and placed the defendant on five years supervised probation.
However, at the time of the offense, La. R.S. 40:967(B)(3) provided for a mandatory hard labor sentence for the manufacture of methamphetamine of 10 to 30 years, "at least ten years of which shall be served without benefit of parole, probation, or suspension of sentence." Because the defendant pled guilty to attempted manufacture of methamphetamine, the minimum sentence is five years at hard labor without benefit of parole, probation, or suspension of sentence. La. R.S. 40:979. Also, for the conviction of possession of methamphetamine with intent to distribute, the sentencing range was not less then two years nor more than thirty years at hard labor. La. R.S. 40:967(B)(1).
After acknowledging that the original sentence was illegally lenient, the court resentenced the defendant to serve five years at hard labor, without benefit of parole, probation, or suspension of sentence for attempted manufacture of methamphetamine and five years at hard labor for possession of methamphetamine with intent to distribute. The sentences were ordered to be served concurrently.
The defendant has not shown that the mandatory minimum sentence in this case is constitutionally excessive. The defendant *889 knowingly and voluntarily allowed others to use his camp house for the manufacture of methamphetamine. The charges against the defendant were reduced, in exchange for his plea, and the charges of possession of marijuana and reckless handling of hazardous materials were dismissed.
The defendant has not shown clearly and convincingly that he is exceptional, which in this context means that because of the unusual circumstances, the defendant is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Wade, 36,295 (La.App.2d Cir.10/23/02), 832 So.2d 977, writ denied, 2002-2875 (La. 840 So.2d 1213. The sentences are tailored to the offender and the offense and are not excessive.

CONCLUSION
For the reasons stated above, we affirm the trial court ruling denying the defendant's motion to suppress the evidence against him. We also affirm the convictions and the sentences imposed.
AFFIRMED.
STEWART, J., concurs with reasons.
PER CURIAM.

ON REHEARING

LIMITED REHEARING GRANTED.
The defendant was originally sentenced to 10 years at hard labor for attempted manufacture of methamphetamine and 10 years at hard labor for possession of methamphetamine with intent to distribute. The sentences were to run concurrently, but were suspended and the defendant was placed on supervised probation for five years.
The prosecution filed a motion to reconsider, claiming the sentence for attempted manufacture of methamphetamine was illegally lenient. The state argued that under La. R.S. 40:967 and 40:979, a portion of the sentence for attempted manufacture of methamphetamine must be served without benefit of parole, probation, or suspension of sentence. The state also contended that a mandatory minimum sentence applied.
The trial court agreed and granted the state's motion. The defendant was resentenced to serve five years at hard labor without benefits for attempted manufacture of methamphetamine. He was also sentenced to serve five years at hard labor for possession of methamphetamine with intent to distribute, with the sentences to run concurrently.
The defendant did not file a motion to reconsider his sentences in the trial court. On appeal the defendant argued that the sentences were excessive.
The defendant sought rehearing. This court invited the state and the defendant to address the issue of a mandatory sentence for attempted manufacture of methamphetamine.
La. R.S. 40:967 provides that the penalty for manufacture of methamphetamine is a sentence of imprisonment at hard labor for not less than 10 years nor more than 30 years, at least 10 years of which shall be served without benefit of parole, probation, or suspension of sentence. In addition, a defendant may be sentenced to pay a fine of not more than five hundred thousand dollars. Regarding the penalty for an attempt, La. R.S. 14:27 is the general attempt statute and states in pertinent part:
D. Whoever attempts to commit any crime shall be punished as follows:

*890 (3) In all other cases he shall be fined or imprisoned or both, in the same manner as for the offense attempted; such fine or imprisonment shall not exceed one-half of the largest fine, or one-half of the longest term of imprisonment prescribed for the offense so attempted, or both. [Emphasis supplied.]
However, La. 40:979 provides a more specific statute on attempts to commit drug offenses. That statute provides:
A. Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounced and/or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the longest term of imprisonment prescribed for the offense, the commission of which was the object of the attempt or conspiracy.[1] [Emphasis supplied.]
The state may choose which of these statutes to use in prosecuting a defendant. State v. O'Blanc, 346 So.2d 686 (La.1977); State v. Thomas, 95-2348 (La.App. 1st Cir.12/20/96), 686 So.2d 145, writ denied, 97-0192 (La.3/14/97), 690 So.2d 36. In the present case, when the state amended its bill of information, the defendant was charged under La. R.S. 40:979.
Some disagreement existed as to whether mandatory minimum sentences are required under the wording of these statutes. In State v. Callahan, 95-1331 (La.3/29/96), 671 So.2d 903, the Louisiana Supreme Court found that La. R.S. 14:27 provides only a maximum sentence for a conviction for an attempt to commit a crime. In that case, the defendant was convicted of attempted possession of marijuana with intent to distribute. The court found that there was no express statutory minimum sentence for an attempt under that provision and the principles of leniency required that the statute be strictly construed.[2]
State v. Thomas, supra, considered the differences in La. R.S. 14:27 and 40:979, as written before the amendment. In that case, the defendant was convicted of attempted possession with intent to distribute cocaine in a drug free zone. That court concluded that although the supreme court in Callahan ruled that there was only a maximum sentence under La. R.S. 14:27, the different language in La. R.S. 40:979 required a mandatory minimum sentence.
In State v. Odle, XXXX-XXXX (La.App. 3d Cir.11/13/02), 834 So.2d 483, writ denied, XXXX-XXXX (La.6/20/03), 847 So.2d 1219, the defendant was convicted of attempted possession of 400 or more grams of cocaine. Because the court could not determine if La. R.S. 14:27 or La. R.S. 40:979 applied, the matter was remanded. However, the court stated that if La. R.S. 40:979 applied, *891 as written before the 2001 amendment, there is a mandatory minimum sentence. The court also expressed agreement with the dissent in State v. Callahan, supra. See also State v. Chatman, 599 So.2d 335 (La.App. 1st Cir.1992); State v. Williams, 588 So.2d 1239 (La.App. 1st Cir.1991), writ denied, 592 So.2d 1333 (La.1992); State v. Laprime, 521 So.2d 538 (La.App. 4th Cir. 1988), writ denied, 524 So.2d 517 (La. 1988).
In the present case, at the time the court heard the motion to reconsider the sentence, the amendment to La. R.S. 40:979 was in effect. We do not know if the trial court considered the amendment to the provision in finding that the sentence, as originally imposed, was illegally lenient. Because the language in La. R.S. 14:27 and 40:979 is now virtually identical, it would appear that the reasoning of State v. Callahan, supra, would apply and there is no longer a mandatory minimum sentence for an attempt. The current sentencing range for attempted manufacturing of methamphetamine is 0-15 years at hard labor, to be served with or without benefit of parole, probation, or suspension of sentence.
While the original and the subsequent sentences imposed for attempted manufacture of methamphetamine fall within the sentence parameters, the trial court's ruling that the first sentence was illegally lenient is in error. Since the judge based his sentence for the second charge, possession of methamphetamine with intent to distribute, on the sentence imposed on the attempted manufacture of methamphetamine, justice demands that the sentences be vacated. We remand for further proceedings. We deny the rehearing application regarding our ruling on the motion to suppress.
SENTENCES VACATED; REMANDED.
STEWART, J., concurs.
NOTES
[1] This statute was amended by Acts 2001, No. 404 § 4, effective June 15, 2001, six months before this offense. It changed the wording of paragraph A to make it very similar to the wording of La. R.S. 14:27. Prior to the amendment, that paragraph read as follows:

Except as otherwise provided herein, any person who attempts or conspires to commit any offense denounced and or made unlawful by the provisions of this Part shall, upon conviction, be fined or imprisoned in the same manner as for the offense planned or attempted, but such fine or imprisonment shall not exceed one-half of the punishment prescribed for the offense, the commission of which was the object of the attempt or conspiracy. [Emphasis supplied.]
[2] Justice Marcus dissented, saying that the phrase "in the same manner" refers to the minimum sentence requirement, and the second sentence refers to the maximum sentence.