960 So.2d 1186 (2007)
STATE of Louisiana, Appellee,
v.
Clifford Ray LATIN, Jr., Appellant.
No. 42,134-KA.
Court of Appeal of Louisiana, Second Circuit.
June 20, 2007.
*1187 Larry English, English & Associates, LLC, for Appellant.
Don Burkett, District Attorney, Richard Z. Johnson, Jr., Assistant District Attorney, for Appellee.
Before GASKINS, DREW and MOORE, JJ.
GASKINS, J.
The defendant, Clifford Ray Latin, Jr., was convicted of attempted possession with intent to distribute a Schedule II controlled dangerous substance, cocaine. He was sentenced to serve seven and one-half years at hard labor without benefit of parole, probation, or suspension of sentence, with credit for time served. The defendant appeals, arguing that the evidence was insufficient to support his conviction. For the following reasons, we affirm the conviction and amend the sentence.

FACTS
At around 2 a.m. on March 24, 2005, Philip Daniels, a deputy with the DeSoto Parish Sheriff's Office, observed the defendant driving a maroon Ford Taurus eastbound on Highway 84, coming into Logansport from Texas. The defendant turned left off Highway 84 onto Second Street in front of Deputy Daniels who had been traveling westbound. Deputy Daniels began to follow the defendant as he turned right onto Elm Street, making the turn "way too wide almost going off the edge of the road on the other side." The defendant accelerated down Elm Street. Deputy Daniels testified that the defendant's vehicle almost ran off the right shoulder of the road near a car wash at Elm Street's intersection with Third Street. At that point, Deputy Daniels noticed "an item being lightly tossed from the driver's window." Deputy Daniels made a mental note of the location and continued to follow the defendant.
The defendant proceeded to the intersection of Elm Street and Marshall Road where he made a left turn onto Marshall Road without obeying a stop sign. At this point, Deputy Daniels activated the lights on his patrol car and pulled the defendant over.
Deputy Daniels requested that another unit come to the scene because of the item which had been tossed from the defendant's vehicle. Once the defendant's vehicle came to a stop, Deputy Daniels noticed that the driver's side window was open and the defendant stuck both of his arms out the window. Deputy Daniels asked the defendant to step out of the vehicle. The defendant complied and produced a valid driver's license. Deputy Daniels asked the defendant about the traffic violations to which the defendant allegedly admitted.
Shortly after the stop began, the defendant's brother, Michael Latin, drove up, parked across the street, and began yelling at Deputy Daniels. Another person was in the car with Michael. Deputy Daniels instructed Michael to return to the opposite side of the road. He eventually complied. The defendant denied that he called his brother to tell him that he was being stopped. When the requested back-up *1188 unit arrived, Deputy Daniels testified that he did not direct the other deputy to the tossed item at that point because of the safety issue presented by the arrival of the defendant's brother.
Deputy Jeff Linger, who was driving the back-up unit, dealt with Michael while Deputy Daniels completed the stop. Deputy Linger testified that Michael was agitated and that he indicated that the defendant had called him on the cell phone to tell him that he was being stopped and asked that he come to that location.
Deputy Daniels conducted a pat down of the defendant for weapons, but did not find any. He also conducted a search of the vehicle after the defendant volunteered the opportunity. All he found in the vehicle were pieces of torn cellophane which the deputy indicated could be associated with the packaging of drugs. When Deputy Daniels asked the defendant whether the cellophane was drug-related, he neither admitted nor denied it; he simply responded that sometimes his girlfriend drove the car.
Deputy Daniels asked the defendant if he had tossed anything from the vehicle prior to the stop; the defendant said that he had not. Deputy Daniels said that during the stop the defendant "was continually looking up the roadway to where the item was thrown from the vehicle." Deputy Daniels decided to release the defendant, but told him that if they recovered the item tossed from the car, they would come to his home and arrest him.
Once the defendant was released, Deputy Daniels informed Deputy Linger about the item that the defendant tossed from the window and its location. Deputies Daniels and Linger proceeded in their separate vehicles to that location and recovered a clear plastic bag containing suspected crack cocaine. Deputy Daniels donned a rubber glove, retrieved the item and placed it in an evidence bag.
The deputies went to the defendant's home at the instruction of Sergeant James Clements. Deputy Linger asked the defendant to accompany him to the sheriff's substation for questioning. The defendant complied. Upon arrival at the substation, the defendant was placed under arrest and read his Miranda rights. The defendant refused to sign a waiver of those rights. Deputy Daniels explained to the defendant why he had been arrested and that no other vehicles had been seen driving by the location where the bag was found. The defendant, who had not been told where the evidence was recovered, pointed to the area where the package was found and told Deputy Daniels that other vehicles had in fact driven by that location.
The defendant was charged with possession with intent to distribute a Schedule II controlled dangerous substance, cocaine. The defendant was tried by a jury in June 2006. At trial, Deputies Daniels and Linger related the events leading to the defendant's arrest. Deputy Daniels also identified a videotape recording of the stop made by a video camera automatically activated in his patrol car when he turned his lights on. However, Deputy Daniels explained that the audio portion of the system was not operational and therefore none of his interaction with the defendant can be heard. A review of the tape indicates that the stop occurred mostly as recalled by both Deputy Daniels and the defendant. The video also reflects that a truck drove by on Marshall Road in the opposite direction from which the defendant had been traveling just prior to the stop.
Sergeant Clements testified that his involvement was limited to instructing the deputies to bring the defendant in and transporting the defendant and the evidence from the substation to the DeSoto Parish Sheriff's Office. He identified the *1189 item retrieved by Deputy Daniels as the evidence which he placed in the evidence locker at the DeSoto Parish Sheriff's Office.
Horace Womack, a deputy with the DeSoto Parish Sheriff's Office, testified that he dusted the cellophane package retrieved from the roadway by Deputy Daniels for fingerprints. He stated that he found no prints, but that the absence of fingerprints was not unusual because cellophane does not develop prints well. He said that he forwarded the evidence to the crime lab for testing of the substance in the cellophane packaging. The state introduced into evidence the report from the North Louisiana Criminalistics Laboratory indicating that the packaged white substance was cocaine.
The defendant's brother, Michael, testified for the defense. He denied that the defendant called to tell him he was being pulled over. He asserted that he learned it from a friend who had been passing by and saw the defendant being pulled over. Michael stated that the other person in his vehicle when he arrived on the scene was his ex-girlfriend. He testified that as he crossed the street, Deputy Daniels told him to "go back to your damned car." Only then did Michael get angry because a "law officer" had cussed at him.
He admitted that when the deputies came to the family home later that evening, they did not question the defendant or place him under arrest; they simply asked that the defendant go with them for questioning. Michael also admitted that he had two misdemeanor convictions, the first for inciting a riot and the second for disturbing the peace.
The defendant took the stand and testified that when he was pulled over, he was returning to Logansport from Texas where he had been drinking with friends. He had a fight with his girlfriend, was angry, and was trying to get in touch with her. He admitted that he was speeding as he came over the bridge on Highway 84 into Logansport, but testified that he was going less than 15 to 20 miles per hour after he had turned onto Second Street. He explained that when he was pulled over, he stuck his hands out the window to indicate that he was "straight or whatever." He denied throwing anything out of the vehicle's window. He also denied that he was under the influence of any illegal drugs at the time, that he ever used illegal drugs or that he dealt drugs. On cross-examination, however, the defendant admitted that he had previously pled guilty to one charge of possession of cocaine.
On June 13, 2006, the jury returned a verdict of guilty to the responsive offense of attempted possession of cocaine with intent to distribute. The trial judge ordered a presentence investigation, and, after a hearing, sentenced defendant to seven and one-half years at hard labor without the benefit of probation, parole or suspension of sentence, with credit for time served, to be served concurrently with any other sentence. The defendant appealed.

SUFFICIENCY OF THE EVIDENCE
The defendant argues that the evidence was insufficient to support his conviction on the charge of attempted possession of cocaine with intent to distribute. The defendant contends that the evidence did not establish that the cellophane package containing cocaine, recovered by the deputies, was the item thrown from his car. The defendant argues that no evidence was given as to the condition of the bag which might indicate how long the item had been on the road. He also urges that the lapse in time between the stop and the discovery of the drugs makes it possible for other passing traffic to have been the source of the drugs. He contends that the *1190 police video shows that a truck traveled down the same street while the defendant was being detained. This argument is without merit.

Legal Principles
The standard of appellate review for a sufficiency of the evidence claim is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); State v. Tate, XXXX-XXXX (La.5/20/03), 851 So.2d 921, cert. denied, 541 U.S. 905, 124 S.Ct. 1604, 158 L.Ed.2d 248 (2004); State v. Murray, 36,137 (La.App.2d Cir.8/29/02), 827 So.2d 488, writ denied, 2002-2634 (La.9/5/03), 852 So.2d 1020. This standard, now legislatively embodied in La. C. Cr. P. art. 821, does not provide the appellate court with a vehicle to substitute its own appreciation of the evidence for that of the fact finder. State v. Pigford, XXXX-XXXX (La.2/22/06), 922 So.2d 517. The appellate court does not assess the credibility of witnesses or reweigh evidence. State v. Smith, 94-3116 (La.10/16/95), 661 So.2d 442. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Gilliam, 36,118 (La.App.2d Cir.8/30/02), 827 So.2d 508, writ denied, XXXX-XXXX (La.11/14/03), 858 So.2d 422.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier of fact to conclude beyond a reasonable doubt that the defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983); State v. Owens, 30,903 (La. App.2d Cir.9/25/98), 719 So.2d 610, writ denied, 1998-2723 (La.2/5/99), 737 So.2d 747. In the absence of internal contradiction or irreconcilable conflict with physical evidence, one witness's testimony, if believed by the trier of fact, is sufficient to support a factual conclusion. State v. Higgins, XXXX-XXXX (La.4/1/05), 898 So.2d 1219, cert. denied, 546 U.S. 883, 126 S.Ct. 182, 163 L.Ed.2d 187 (2005).
La. R.S. 40:967(A) provides, in pertinent part, that it shall be unlawful for any person knowingly or intentionally to possess with intent to distribute a controlled dangerous substance or controlled substance classified in Schedule II. Cocaine is a Schedule II controlled dangerous substance. See La. R.S. 40:964, Schedule II(A)(4). The defendant was found guilty of attempted possession of cocaine with the intent to distribute. La. R.S. 14:27 states that any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing his object is guilty of an attempt. See also La. R.S. 40:979.

Discussion
The only issue presented in this appeal is whether the evidence was sufficient to support the jury's finding that the cocaine recovered from the roadway was the item tossed by the defendant from the vehicle just prior to being pulled over. The record supports the jury's verdict.
Deputy Daniels testified unequivocally that the defendant "lightly tossed" an item out of the driver's side window as he traveled down Elm Street in front of a car wash near the intersection of Elm Street and Third Street. Deputy Daniels testified that once the traffic stop was completed, *1191 he and Deputy Linger went to the location where he remembered the item had been tossed and located the package of cocaine.
Deputy Daniels stated that during the stop, the defendant kept looking back to the area where the package was tossed out of the car. Later, at the substation, while being questioned about this incident, the defendant exhibited knowledge of the area where the drugs were located, without being prompted by the deputies. Deputy Linger's testimony corroborated Deputy Daniels' testimony.
The defendant contended that the drugs were thrown from some other vehicle. He claims that the video from the patrol car shows that a truck traveled down the road where the drugs were found. Actually, the truck was traveling on Marshall Road, not on Elm Street where Deputy Daniels observed the defendant throw something from his car and where the drugs were recovered.
When a case involves circumstantial evidence, and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. State v. Captville, 448 So.2d 676 (La.1984). In the instant matter, the defendant's hypothesis of innocence was based on the theory that someone else discarded the cocaine discovered on the roadway. The defendant's argument that the cocaine could have been there for some time or could have been disposed of by subsequent traffic is a hypothesis of innocence which the jury rejected. This evidence is sufficient to support the conviction of attempted possession of cocaine with the intent to distribute.[1]

ERROR PATENT
In our review for error patent on the face of the record, we note that the sentence imposed by the trial court is illegal in that it orders that all of the defendant's sentence be served without benefit of parole, probation, or suspension of sentence. According to La. R.S. 40:967(B)(4)(b), the penalty for possession of Schedule II CDS, cocaine, with intent to distribute is "a term of imprisonment at hard labor for not less than two years nor more than thirty years, with the first two years of said sentence being without benefit of parole, probation, or suspension of sentence." When a defendant is convicted of an attempted offense, the punishment is "in the same manner as for the offense attempted," but the term of imprisonment shall not exceed "one-half of the longest term of imprisonment prescribed for the offense so attempted." La. R.S. 14:27; La. R.S. 40:979. There is no express statutory minimum sentence for being convicted of an attempt, and principles of lenity require that the statute be strictly construed. State v. Callahan, 95-1331 (La.3/29/96), 671 So.2d 903. The language in the attempt statutes of La. R.S. 14:27 and 40:979 is now virtually identical. Therefore, under either statute, the reasoning of State v. Callahan, supra, applies *1192 and there is no longer a mandatory minimum sentence for an attempt. State v. Howard, 37,580 (La.App.2d Cir.9/24/03), 855 So.2d 881. See and compare State v. Odle, XXXX-XXXX (La.App. 3d Cir.11/13/02), 834 So.2d 483, writ denied, XXXX-XXXX (La.6/20/03), 847 So.2d 1219. See also State v. Brown, 2000-2120 (La.App. 4th Cir.12/19/01), 804 So.2d 863, writ denied, XXXX-XXXX (La.2/7/03), 836 So.2d 85, holding that where the completed offense requires that only the minimum sentence be served without some combination of benefits, that requirement does not exist for an attempt.[2]
Thus, the trial court improperly ordered that all of the defendant's sentence be served without benefit of parole, probation, or suspension of sentence. Because there is no mandatory minimum sentence for an attempt, under the statutory scheme in this case, the sentence cannot be ordered to be served without benefit of parole, probation, or suspension of sentence. Under the authority granted this court in La. C. Cr. P. art. 882, we amend the sentence by setting aside the requirement that any portion of the sentence be served without benefit of parole, probation, or suspension of sentence.

CONCLUSIONS AND RECOMMENDATIONS
For the foregoing reasons, we affirm the defendant's conviction and amend his sentence to delete the requirement that any portion of the sentence be served without benefit of parole, probation, or suspension of sentence.
CONVICTION AFFIRMED; SENTENCE AMENDED AND, AS AMENDED, AFFIRMED.
NOTES
[1] This case is distinguishable from State v. Hongo, 2006-829 (La.App. 3d Cir.12/6/06), 944 So.2d 856, cited by the defendant. In State v. Hongo, supra, an object was thrown out the passenger window of the defendant's car just prior to a traffic stop. There was a passenger in the car with the defendant and there was no evidence as to who threw the object from the car. A bag containing cocaine was recovered shortly after the defendant was released. The third circuit found that the evidence was insufficient to prove that the plastic bag was the object recovered from the defendant's car or that the defendant exercised dominion or control over the drugs. In the present case, the defendant was alone, Deputy Daniels saw the defendant throw an object from the car, and the defendant exhibited knowledge of the location where the package was discarded.
[2] In contrast, the third circuit in State v. Everett, 2005-214 (La.App. 3d Cir.11/2/05), 916 So.2d 1210, ruled that a sentence for attempted possession of a firearm by a convicted felon could be ordered to be served without benefit of parole, probation, or suspension of sentence because La. R.S. 14:95.1(B) required that the entire sentence imposed be served without benefits. This is distinguishable from statutes such as those in the present case where the penalty for the completed offense requires only that the statutory minimum be served with benefit of parole, probation, or suspension of sentence. See State v. Rodriguez, XXXX-XXXX (La.App. 4th Cir.2/14/01), 781 So.2d 640.